UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LEN BOOGAARD and JOANNE BOOGAARD, Personal Representatives of the Estate of DEREK BOOGAARD, Deceased, | ) ) ) ) | 13 C 4846 |
| Plaintiffs, | ) ) | Judge Gary Feinerman |
| vs. | ) ) | |
| NATIONAL HOCKEY LEAGUE, NATIONAL HOCKEY LEAGUE BOARD OF GOVERNORS, and GARY B. BETTMAN, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The personal representatives of Derek Boogaard's estate (for ease of exposition, the court will treat Boogaard himself as the plaintiff) brought this suit against the National Hockey League and its Board of Governors and Commissioner (collectively, "NHL"), alleging tort claims connected with Boogaard's death. Docs. 1-1, 62. Earlier in the case, the court denied Boogaard's motion to remand the suit to state court. Docs. 37-38 (reported at 20 F. Supp. 3d 650 (N.D. Ill. 2014)). After discovery, the court granted summary judgment against Boogaard on all claims set forth in the first amended complaint. Docs. 140-41 (reported at 126 F. Supp. 3d 1010 (N.D. Ill. 2015)). Now before the court is Boogaard's motion for leave to file a second amended complaint. Doc. 143. The motion is granted.

According to the proposed second amended complaint, Boogaard played for two NHL teams as an "Enforcer/Fighter," which means that his principal job was to fight opposing players during games. Doc. 145-1 at ¶¶ 2-3. During the fights he suffered brain injuries, which eventually developed into chronic traumatic encephalopathy, or "CTE," a brain disorder

1

characterized by deteriorating judgment, inhibition, mood, reasoning, behavior, and impulse control. *Id*. at ¶¶ 4-7. Boogaard routinely suffered other painful injuries as well, and team doctors treated his symptoms with opioids, a class of highly addictive pain medications. *Id*. at ¶¶ 4, 119-122, 127-137. Boogaard became addicted to opioids, went to rehab, relapsed, and went to rehab again. *Id*. at ¶¶ 138, 140, 156-160. When he was on weekend release from his second stay in rehab, he took Percocet, accidentally overdosed, and died. *Id*. at ¶¶ 164-165, 206. He was 28 years old. *Id*. at ¶ 1.

The first amended complaint set forth eight claims. Counts I and II alleged that the NHL breached a duty to keep Boogaard safe when it allowed team doctors to get him addicted to opioids. Doc. 62 at ¶¶ 43-101. Counts III and IV alleged that the NHL injured Boogaard by failing to manage his addiction according to the terms of the NHL's collectively bargained Substance Abuse and Behavioral Health Program. *Id*. at ¶¶ 102-200; *see* 20 F. Supp. 3d at 658 (holding that the Program was part of a 2005 collective bargaining agreement). Counts V and VI alleged that the NHL breached a voluntarily assumed duty to protect Boogaard from brain trauma. Doc. 62 at ¶¶ 201-226. And Counts VII and VIII alleged that the NHL breached a voluntarily assumed duty to keep Boogaard safe when it allowed team doctors to inject him with Toradol, an intramuscular analgesic that makes concussions more likely and more dangerous. *Id*. at ¶¶ 227-267.

The NHL moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the first amended complaint on the ground that its claims were completely preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, in light of the fact that a collective bargaining agreement ("CBA") governed the relationship between Boogaard and the NHL at all relevant times. Doc. 43. The court applied Rule 12(d) to convert the NHL's Rule

12(b)(6) motion into a Rule 56 summary judgment motion. Doc. 58. Boogaard moved for leave to file a second amended complaint while the summary judgment motion remained pending. Doc. 130. The court granted summary judgment on the ground that the first amended complaint's claims were completely preempted by § 301 of the LMRA and that Boogaard § 301 claims—which is how his claims, having been completely preempted, had to be characterized— were barred by the applicable statute of limitations. 126 F. Supp. 3d at 1016-27. Boogaard then renewed his motion for leave to file a second amended complaint. Doc. 143.

Under Rule 15(a)(2), leave to amend "shall be freely given when justice so requires," but "leave is inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Villa v. City of Chicago*, 924 F.2d 629, 632 (7th Cir. 1991); *see also Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997) ("Even though Rule 15(a) provides that 'leave shall be freely given when justice so requires,' a district court may deny leave to amend for … futility. The opportunity to amend a complaint is futile if the complaint, as amended, would fail to state a claim upon which relief could be granted.") (citation and some internal quotation marks omitted). The NHL argues that the proposed second amended complaint would be futile because its claims, like the first amended complaint's claims, are all completely preempted by the LMRA and, as LMRA claims, are barred on limitations grounds; the NHL makes no other futility argument. Doc. 152.

Under the complete preemption doctrine, "the pre-emptive force of [a federal] statute … converts an ordinary state common-law complaint into one stating a federal claim." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (internal quotation marks omitted). "Once an area of

3

state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim." *Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 800 (7th Cir. 2013) (internal quotation marks omitted); *see also Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n*, 707 F.3d 883, 894 (7th Cir. 2013). Section 301 of the LMRA completely preempts state law claims "founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar*, 482 U.S. at 394 (internal quotation marks omitted); *see also Nelson v. Stewart*, 422 F.3d 463, 467-69 (7th Cir. 2005); *In re Bentz Metal Prods. Co.*, 253 F.3d 283, 285-86 (7th Cir. 2001) (en banc). Preemption under § 301 "covers not only obvious disputes over labor contracts, but also any claim masquerading as a state-law claim that nevertheless is deemed 'really' to be a claim under a labor contract." *Crosby*, 725 F.3d at 797.

As the court explained in earlier opinions, 20 F. Supp. 3d at 653-58; 126 F. Supp. 3d at 1016-25, the first amended complaint's claims were completely preempted because resolving them would have required the court to interpret the CBA. Counts III through VIII alleged that the NHL voluntarily assumed a duty to protect Boogaard and that it had breached that duty. The scope of one person's voluntarily assumed duty to protect another depends on the totality of the circumstances, which in this case would have included contested interpretations of the CBA. *See LM ex rel. KM v. United States*, 344 F.3d 695, 700 (7th Cir. 2003) ("[W]hether a voluntary undertaking has been assumed is necessarily a fact-specific inquiry."); *Bourgonje v. Machev*, 841 N.E.2d 96, 114 (Ill. App. 2005) ("[T]he existence and extent of voluntary undertakings are to be analyzed on a case-by-case basis."). In particular, the scope of the NHL's voluntarily assumed duty to Boogaard depends on reasonable disputes concerning whether the CBA allowed the NHL

4

to unilaterally prohibit fighting, to prohibit team doctors from administering Toradol, or to require team doctors to follow certain procedures for diagnosing concussions—rendering Counts III through VIII completely preempted. 20 F. Supp. 3d at 653-58; 126 F. Supp. 3d at 1018-22. Counts I and II, meanwhile, alleged that the NHL had breached a freestanding duty to protect Boogaard from addiction. Ordinarily, people are under no obligation to protect others from harm unless they have a "special relationship." *Domagala v. Rolland*, 805 N.W.2d 14, 23 (Minn. 2011); *accord Iseberg v. Gross*, 879 N.E.2d 278, 284 (Ill. 2007). But whether the NHL had a special relationship with Boogaard depends on the extent to which the NHL exercised control over Boogaard's behavior and safety, which in turn depends on contested interpretations of the CBA—rendering Counts I and II completely preempted as well. 126 F. Supp. 3d at 1022-24.

The proposed second amended complaint has twelve counts. Counts V through XII are essentially identical to the first amended complaint's eight counts, *compare* Doc. 145-1 at ¶¶ 119-256, *with* Doc. 62 at ¶¶ 43-267, and are therefore completely preempted and time-barred for the reasons set forth in the court's earlier opinions. But Counts I through IV of the proposed second amended complaint are new, and unlike the other eight counts, they allege that the NHL *actively* harmed Boogaard. Doc. 145-1 at ¶¶ 33-118. Every person has a duty not to act unreasonably in a way that injures others; the court need not interpret the CBA to determine the existence or scope of that duty, and so claims based on the breach of that duty are not preempted. 126 F. Supp. 3d at 1024-25 (distinguishing three other decisions that "involve[d] the [uncontroversial] duty not to unreasonably harm other people" and that therefore did not find LMRA preemption); *see McPherson v. Tenn. Football Inc.*, 2007 U.S. Dist. LEXIS 39595, at *22 (M.D. Tenn. May 31, 2007) (holding that a claim against an NFL team for injuries the plaintiff suffered when the team's employee hit the plaintiff with a golf cart during a halftime

5

show was not completely preempted); *Stringer v. Nat'l Football League*, 474 F. Supp. 2d 894, 912-13 (S.D. Ohio 2007) (holding that a claim against the NFL for mandating the use of dangerous equipment was not preempted); *Brown v. Nat'l Football League*, 219 F. Supp. 2d 372, 390 (S.D.N.Y. 2002) (remanding a claim against the NFL for injuries the plaintiff suffered when a referee, an NFL employee, hit the plaintiff in the eye with a heavy penalty flag).

The NHL does not attempt to explain how claims alleging active misdeeds would require interpretation of the CBA. Doc. 152 at 21-30. Instead, it argues that Counts I through IV of the proposed second amended complaint are merely "repackaged" versions of the other, preempted claims. *Id*. at 21, 25. But that is not so. Counts I and II allege that the NHL *both* failed to eliminate violence in professional hockey *and* actively promoted violence. The NHL is correct that those counts are preempted to the extent they are based on allegations that the NHL failed to eliminate violence, for the same reasons that Counts V through XII are preempted. The court would need to interpret the CBA to determine whether the NHL had a duty to eliminate violence; for instance, it would be unlikely that the NHL had such a duty if the CBA prohibited it from eliminating violence. 126 F. Supp. 3d at 1020-21. The NHL is also correct that Counts I and II cannot proceed on a theory that, once the NHL had put Boogaard at risk, it had a duty to protect him from the risk. Doc. 152 at 24. Courts in both Illinois and Minnesota have rejected the existence of such a duty. *See Domagala*, 805 N.W.2d at 25-26 (noting that the theory has "received heavy criticism from multiple jurisdictions" and "declin[ing] at this time to adopt" it "as a basis for imposing a duty of care in a negligence claim"); *Brewster v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 836 N.E.2d 635, 639 (Ill. App. 2005) (rejecting the plaintiff's request to apply Restatement (Second) of Torts § 321, which codifies the discussed theory, on the grounds that it "has been criticized for its vagueness and seemingly limitless scope" and that the Supreme

Court of Illinois "has not adopted section 321 as an exception to the general rule that one will not be liable to a third party absent a special relationship").

But Counts I and II also allege that the NHL took several active and unreasonable steps that ultimately harmed Boogaard. Specifically, they allege that the NHL promoted on an affiliated website an HBO documentary glorifying the "Broad Street Bullies," a Philadelphia Flyers team known for fighting; that it created promotional films "that focus on the hardest hits that take place on the ice"; that it displayed stories about enforcers and on-ice fights on its website "on a nightly basis"; that it produced on an affiliated TV network "a weekly program segment called 'Top 10 Hits of the Week'"; and that it sponsored video games that "includ[ed] fighting and vicious body checking." Doc. 145-1 at ¶ 57. Those actions, Counts I and II allege, cultivated a "culture of violence" in the NHL, which caused Boogaard to get into fights, which in turn caused him to develop CTE and an addiction to opioids, which in turn caused his death. *Id*. at ¶¶ 35, 69, 78. That theory of tort—that the NHL unreasonably harmed Boogaard—is viable under Illinois and Minnesota law and not preempted by the LMRA.

Counts III and IV are similar. True, those counts include allegations that the NHL failed to warn Boogaard of the risks of concussions, and they would be preempted if they relied only on those allegations. *Id*. at ¶¶ 89, 94, 97. But Counts III and IV also contain the seed of a viable, non-preempted claim: that the NHL actively and unreasonably harmed Boogaard by implicitly communicating that head trauma is not dangerous. In particular, Counts III and IV allege that the NHL made a show of "study[ing] … repetitive concussive and/or sub-concussive brain traumas amidst its player population," which caused NHL players to "reasonably believe[] that the NHL's findings would apprise them of any and all long-term risks" of playing professional hockey. *Id*. at ¶¶ 81, 83, 86. It was not until after Boogaard's death that the NHL reported its

7

findings. *Id*. at ¶ 90. Because the NHL had publicized that it was studying the effects of brain trauma, Counts III and IV allege, its silence on the issue implied that it had found that the effects were minor. *Id*. at ¶ 89 ("By gratuitously conducting scientific research and engaging in discussion of the long-term effects of brain injuries sustained by NHL players, and by publicly maintaining that its Concussion Program was thoroughly analyzing concussion data, the NHL gave its players the false impression that it was working on their behalf to keep them informed and up-to-date on all medical and scientific advancements related to repetitive head trauma."). Players, including Boogaard, allegedly relied on that implication when they continued playing in a way that would give them concussions. *Id*. at ¶ 95.

The proposed second amended complaint is imperfect. Counts V through XII reiterate claims that the court has already dismissed, and Counts I through IV mix together different kinds of allegations, some completely preempted by the LMRA and some not. But federal courts use notice pleading, not code pleading; the way a plaintiff separates allegations into counts can be a useful organizational tool, but in the end what matters is whether the complaint includes allegations that, taken together, entitle the plaintiff to relief. *See Maddox v. Love*, 655 F.3d 709, 719 (7th Cir. 2011) ("The problem, as we see it, is trying to separate Maddox's claim for religious fellowship (the subject of his grievance) into separate counts (Counts 2, 3, and 4). The better approach is to examine the facts in the aggregate ….").

So, while most of the claims in Boogaard's proposed second amended complaint are preempted by the LMRA and time-barred, a few are not, and the amendment accordingly is not futile. Boogaard's motion for leave to amend is granted. Counts V through XII are dismissed as completely preempted and barred on limitations grounds, as are the above-referenced portions of Counts I through IV. Defendants shall answer or otherwise plead to the second amended

8

complaint (other than the dismissed claims) by October 20, 2016. If Defendants move to dismiss any of the surviving claims, they should not do so on preemption grounds.

September 29, 2016

_____
United States District Judge