UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEN BOOGAARD and JOANNE BOOGAARD, Personal Representatives of the Estate of DEREK BOOGAARD, Deceased, | )<br>)<br>)  13 C 4846<br>) |
| Plaintiffs, | )  Judge Gary Feinerman<br>) |
| vs. | )<br>) |
| NATIONAL HOCKEY LEAGUE, NATIONAL HOCKEY LEAGUE BOARD OF GOVERNORS, and GARY B. BETTMAN, | )<br>)<br>)<br>) |
| Defendants. | ) |

**M<small>EMORANDUM</small> O<small>PINION AND</small> O<small>RDER</small>**

Len and Joanne Boogaard, the personal representatives of the estate of Derek Boogaard, bring this suit against the National Hockey League and its Board of Governors and Commissioner (collectively, "NHL"), alleging tort claims connected with Boogaard's death. Docs. 1-1, 62, 174. (For ease of reference, and except where context requires otherwise, the court will refer to Plaintiffs as "Boogaard.") As matters now stand, Counts V-XII of the second amended complaint have been dismissed, and Counts I-IV remain in the case. Docs. 168-169, 174. The NHL has moved to dismiss the remaining claims, Doc. 177, while Boogaard has moved to remand the case to state court, Doc 182. The NHL's motion is granted, and Boogaard's motion is denied.

**Background**

The previous personal representative of Boogaard's estate, Robert Nelson, filed this suit in the Circuit Court of Cook County, Illinois. Doc. 1-1. The NHL removed the case to this court under 28 U.S.C. § 1441 on the ground that the original complaint's claims, which purportedly

1

rested on state law, were completely preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and thus in fact were federal claims. Doc. 1; *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). The court denied Boogaard's motion to remand, holding that at least some of his claims were completely preempted. Docs. 37-38 (reported at 20 F. Supp. 3d 650 (N.D. Ill. 2014)). Boogaard then filed an amended complaint, which set forth eight counts. Doc. 62. After discovery, the court granted summary judgment to the NHL on all eight counts, holding that they were completely preempted by § 301 of the LMRA and that the § 301 claims—which is how the preempted claims had to be characterized—were barred by the applicable statute of limitations. Docs. 140-141 (reported at 126 F. Supp. 3d 1010 (N.D. Ill. 2015)).

Boogaard moved for leave to file a second amended complaint, which set forth twelve counts. Docs. 135, 143. The NHL opposed that motion on the ground that the second amended complaint's claims, like those of the first amended complaint, were completely preempted by § 301 of the LMRA and, as § 301 claims, were time-barred. Docs. 151-152. The court granted in part and denied in part the motion for leave to amend. Docs. 168-169 (reported at 211 F. Supp. 3d 1107 (N.D. Ill. 2016)). Specifically, the court held that eight of the second amended complaint's counts, Counts V-XII, were "essentially identical to the first amended complaint's eight counts … and are therefore completely preempted and time-barred for the reasons set forth in the court's earlier opinions." 211 F. Supp. 3d at 1111. But the court held that portions of the other four counts, Counts I-IV, stated non-preempted—and thus true state law—claims. *Ibid*. Accordingly, the court dismissed with prejudice Counts V-XII and the completely preempted portions of Counts I-IV; ordered the NHL to answer or otherwise plead to the surviving portions

of the complaint; and stated that if the NHL "move[s] to dismiss any of the surviving claims, [it] should not do so on preemption grounds." Doc. 168.

Now before the court are the NHL's motion to dismiss the second amended complaint's surviving claims, Doc. 177, and Boogaard's motion to remand the case to state court, Doc. 182.

**Discussion**

**I.      The NHL's Motion to Dismiss**

In moving to dismiss, the NHL contends that the second amended complaint's state law claims—the NHL actually continues to argue that Counts I-IV include no true state law claims, Doc. 178 at 11-17, but proceeds to assume for the sake of argument that they do—are governed and defeated by Minnesota law. *Id*. at 18-27. The NHL argues in the alternative that, regardless of which State's law applies, Boogaard has no viable claim. *Id*. at 27-40.

In resolving the NHL's Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Boogaard's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013). The facts are set forth as favorably to Boogaard as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth those facts at the pleading stage, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

Boogaard played hockey for the NHL for six years—five for the Minnesota Wild, and one for the New York Rangers. Doc. 174 at ¶¶ 2, 11. As an "Enforcer/Fighter," Boogaard's principal job during games was to fight opposing players. *Id*. at ¶¶ 2-3. As a result of the fights, he suffered brain injuries, which eventually developed into chronic traumatic encephalopathy, or "CTE," a brain disorder characterized by deteriorating judgment, inhibition, mood, reasoning, behavior, and impulse control. *Id*. at ¶¶ 4-7. Boogaard routinely suffered other painful injuries as well, and team doctors treated his symptoms with opioids, a class of highly addictive pain medications. *Id*. at ¶¶ 4, 119-122, 127-137. Boogaard became addicted to opioids, went to rehab, relapsed, and returned to rehab. *Id*. at ¶¶ 138, 140, 156-160. In May 2011, while on weekend release in Minnesota from his second stay in rehab, he accidentally overdosed on Percocet and died. *Id*. at ¶¶ 164-165, 206. He was 28 years old. *Id*. at ¶ 1.

Counts I-II—a survival claim and wrongful death claim, respectively—rest on the following allegations. During Boogaard's career, the NHL cultivated a "culture of gratuitous violence," which caused him to get into fights, which in turn caused him to develop CTE and become addicted to opioids, which in turn caused his death. *Id*. at ¶¶ 44, 75, 78. The NHL encouraged violence by, among other things, promoting an HBO documentary glorifying the "Broad Street Bullies," a Philadelphia Flyers team known for fighting; creating promotional films "that focus on the hardest hits that take place on the ice"; displaying on its website stories about enforcers and on-ice fights "on a nightly basis"; producing on an affiliated television network "a weekly program segment called 'Top 10 Hits of the Week'"; and sponsoring video games that "include[ed] fighting and vicious body checking." *Id*. at ¶ 57.

Counts III-IV—also a survival claim and wrongful death claim, respectively—allege that the NHL actively and unreasonably harmed Boogaard by implicitly communicating that head

4

trauma is not dangerous. The NHL communicated this message by suggesting that it was "study[ing] … repetitive concussive and/or sub-concussive brain traumas amidst its player population," which caused NHL players to "reasonably believe[] that the NHL's findings would apprise them of any and all long-term risks" of playing professional hockey. *Id.* at ¶¶ 81, 83. It was not until after Boogaard's death that the NHL reported its findings. *Id.* at ¶ 90. By publicizing the fact that it was studying the effects of brain trauma, the NHL's silence on the issue during Boogaard's career implicitly conveyed that it had found that those effects were minor. *Id.* at ¶¶ 89, 94. Boogaard relied on that implied message when he continued playing in a way that would give him concussions. *Id.* at ¶ 108.

A. **Minnesota Law Governs Boogaard's Non-Preempted Claims**

In pleading Counts I-IV, Boogaard expressly invokes Illinois and Minnesota law. *Id.* at ¶¶ 77, 80, 115, 118. Counts I and III—the survival claims—are brought "pursuant to Minn. Stat. § 573.02 and 755 ILCS 5/27-6, commonly known as the Survival Acts of the States of Minnesota and Illinois." *Id.* at ¶¶ 77, 115. Counts II and IV—the wrongful death claims—are brought "pursuant to the Minnesota Wrongful Death Statute, Minn. Stat. § 573.02, and the Illinois Wrongful Death Statute, 740 ILCS 180/1, *et seq.*," *id.* at ¶¶ 80, 118. Despite invoking Illinois and Minnesota law in the operative complaint, and despite having nearly three years to think about his claims before moving for leave to file that complaint, Boogaard asserts for the first time in his opposition brief that *New York* law applies. Doc. 185 at 13-15, 20-21. In poker, that would be called a "tell"; as will soon become clear, the NHL's motion to dismiss advanced compelling arguments for dismissing Boogaard's claims under Illinois law and particularly Minnesota law, and Boogaard's extraordinarily belated retreat to New York law is an obvious signal that his lawyers no longer think much of his prospects under Minnesota or Illinois law.

5

Because this case was filed in Illinois, Illinois choice-of-law rules guide the inquiry into which state law applies. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) ("[T]he prohibition declared in *Erie Railroad v. Tompkins* … extends to the field of conflict of laws."); *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) ("Federal courts hearing state law claims under diversity or supplemental jurisdiction apply the forum state's choice of law rules to select the applicable state substantive law."). "Illinois has adopted the approach found in the Second Restatement of Conflict of Laws." *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 919 (Ill. 2007). Under the Second Restatement, the law of the State that "has the most significant relationship to the occurrence and the parties" applies. *Restatement (Second) of Conflict of Laws* § 145(1) (1971); *see also Kamelgard v. Macura*, 585 F.3d 334, 341 (7th Cir. 2009) (observing that "most states, including Illinois, nowadays apply the law of the state that has the 'most significant relationship' to the claim"). In tort cases, the "most significant relationship" analysis turns on: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Restatement (Second) of Conflict of Laws* § 145(2); *see also Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 901 (Ill. 2007) (same). "Under this test, the law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and with the parties." *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 916 (7th Cir. 2006). As the Seventh Circuit has explained: "[I]n the absence of unusual circumstances, the highest scorer on the 'most significant relationship' test is—the place where the tort occurred. … Victim location and injurer location are valid considerations. But when they point to two different jurisdictions they cancel out, leaving the place where the injury (and hence the tort)

occurred as the presumptive source of the law governing the accident." *Abad v. Bayer Corp.*, 563 F.3d 663, 669-70 (7th Cir. 2009).

Minnesota has the most significant relationship to the occurrence and the parties by a wide margin. The first and most important consideration, where the injury occurred, is Minnesota, which is the place of Boogaard's death and where he spent the bulk of his NHL career. Doc. 174 at ¶¶ 2, 11, 164-165. This makes Minnesota the "presumptive source" of governing law. *Abad*, 563 F.3d at 670.

As to the second factor, Minnesota is the primary location where the conduct causing Boogaard's injury occurred. Minnesota is where Boogaard spent the bulk of his career, Doc. 174 at ¶¶ 2, 11; where replays of his fights were routinely shown, *id.* at ¶ 65; where doctors prescribed and administered pain medications, *id.* at ¶¶ 127, 130-131, 242-244; where he purchased drugs, *id.* at ¶ 184; where he transported drugs that he had purchased elsewhere, *id.* at ¶ 199; and where the drugs that ended his life were ingested, *id.* at ¶¶ 164-165. Boogaard occasionally got into on-ice fights, was given pain medications, and purchased drugs in other States, *id.* at ¶¶ 143, 156, 199, 242-244, 246, but those isolated instances do not outweigh the far more substantial Minnesota contacts. The operative complaint's allegations do not support Boogaard's argument in his opposition brief that the conduct causing his injuries occurred "most notably" in the NHL's New York office. Doc. 185 at 13.

The third consideration, the location of the parties, does not weigh strongly in any State's favor. The NHL is based in New York but has member teams in many States, including Minnesota and Illinois. Doc. 174 at ¶¶ 11-12; Doc. 185 at 13. Boogaard lived primarily in Minnesota and for a short time in New York during his NHL career, and his domicile when he died remains somewhat uncertain but probably was Minnesota. Doc. 174 at ¶¶ 2, 11; Doc. 185 at

7

13 (admitting that, during the year he played for the New York Rangers, Boogaard "maintained property in Minnesota"); 20 F. Supp. 3d at 652 n.\* ("Boogaard likely was a Minnesota citizen when he died."). Finally, the fourth factor, the place where the parties' relationship was centered, favors Minnesota because Boogaard spent the vast majority of his career as a member of the NHL's Minnesota team. Doc. 174 at ¶¶ 2, 11.

Illinois law requires the court to consider those contacts, which point very strongly toward Minnesota, "in light of the general principles embodied in § 6" of the Restatement. *Townsend*, 879 N.E.2d at 906. Those principles are:

> (a) the needs of the interstate and international systems,
> 
> (b) the relevant policies of the forum,
> 
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> 
> (d) the protection of justified expectations,
> 
> (e) the basic policies underlying the particular field of law,
> 
> (f) certainty, predictability and uniformity of result, and
> 
> (g) ease in the determination and application of the law to be applied.

*Restatement (Second) of Conflict of Laws* § 6.

Those principles provide no basis to supplant Minnesota law. The NHL contends, reasonably, that the § 6 factors favor Minnesota law. Doc. 178 at 23; Doc. 195 at 16-19. In his opposition brief, Boogaard states that those factors favor Illinois or New York law, Doc. 185 at 14-15, but he fails to make a legal argument or cite any legal authority to support his position, thus forfeiting the point. *See G&S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the

district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (citations omitted).

For all of these reasons, Minnesota law governs Boogaard's non-preempted claims.

### B. Boogaard Fails to State a Claim Under Minnesota Law

As the operative complaint acknowledges, Doc. 174 at ¶¶ 77, 80, 115, 118, the Minnesota statute that governs Boogaard's survival and wrongful death claims is Minn Stat. § 573.02. That statute provides, in relevant part:

> **Subd. 1. Death action.** When death is caused by the wrongful act or omission of any person or corporation, *the trustee appointed as provided in subdivision 3* may maintain an action therefor if the decedent might have maintained an action, had the decedent lived, for an injury caused by the wrongful act or omission. … An action to recover damages for a death caused by an intentional act constituting murder may be commenced at any time after the death of the decedent. Any other action under this section may be commenced within three years after the date of death provided that the action must be commenced within six years after the act or omission. …
>
> **Subd. 2. Injury action.** When injury is caused to a person by the wrongful act or omission of any person or corporation and the person thereafter dies from a cause unrelated to those injuries, *the trustee appointed in subdivision 3* may maintain an action for special damages arising out of such injury if the decedent might have maintained an action therefor had the decedent lived.
>
> **Subd 3. Trustee for Action.** Upon written petition by the surviving spouse or one of the next of kin, the court having jurisdiction of an action falling within the provisions of subdivisions 1 or 2, shall appoint a suitable and competent person as trustee to commence or continue such action and obtain recovery of damages therein. The trustee, before commencing duties shall file a consent and oath. Before receiving any money, the trustee shall file a bond as security therefor in such form and with such sureties as the court may require.

Minn. Stat. § 573.02 (emphases added). Section 573.02(1) is the wrongful death provision, § 573.02(2) is the survival provision, and § 573.02(3) concerns trustees. The NHL argues, correctly, that Boogaard's claims founder on the trustee requirement.

The emphasized statutory text makes clear that § 573.02 claims must be brought by a court-appointed trustee. Consistent with the text, the Minnesota Supreme Court has held that "[a] plaintiff's failure to commence a wrongful death action as a court-appointed trustee … precludes her from maintaining the action." *Ortiz v. Gavenda*, 590 N.W.2d 119, 120 (Minn. 1999) (affirming the dismissal of a widow's § 573.02 claim on behalf of her deceased husband because she had not been appointed as a trustee); *Sheeley v. City of Austin*, 2015 WL 506293, at *3 (D. Minn. Feb. 6, 2015) ("Maintaining an action under subdivision 1 or 2 of Minn. Stat. § 573.02 requires a trustee be appointed to sustain the decedent's action.").

The two plaintiffs here, Len and Joanne Boogaard, are Boogaard's "personal representatives," not "trustees." Doc. 174 at ¶ 26 ("LEN BOOGAARD and JOANNE BOOGAARD were appointed … as Successor Personal Representatives of the Estate of DEREK BOOGAARD … ."); Doc. 185 at 5, 18 (Boogaard acknowledging that Len and Joanne Boogaard were appointed "Personal Representatives" and not trustees). (The same was true for the previous plaintiff, Robert Nelson. Doc. 1-1 at 2.) Therefore, Boogaard's claims, which arise under § 573.02, are not viable under Minnesota law. *See Ortiz*, 590 N.W.2d at 123-24 ("The appointment of a trustee under Minn. Stat. § 573.02 is an exercise of the fundamental legal principle that those entitled to recovery as a result of the wrongful death shall be represented by the trustee without compromise."); *Regie de l'assurance Auto. du Quebec v. Jensen*, 399 N.W.2d 85, 92 (Minn. 1987) (holding that a § 573.02 suit without appointment of a trustee is a "legal nullity"); *Steinlage v. Mayo Clinic Rochester*, 435 F.3d 913, 915 (8th Cir. 2006) ("[U]pon death, the right to … institute new actions based on personal injury[] belong[s] to the wrongful death trustee."); *Sheeley*, 2015 WL 506293, at *3 ("[E]state representatives are not the equivalent to a wrongful death trustee.").

In Boogaard's view, the question whether Len and Joanne can bring this suit is governed by Rule 17(b). Doc. 185 at 15-16. Rule 17(b) states, in relevant part, that "[c]apacity to sue or be sued is determined … by the law of the state where the court is located." Fed. R. Civ. P. 17(b). This court is located in Illinois, and from that premise, Boogaard concludes that Illinois law governs whether Len and Joanne Boogaard can bring this suit. That argument misunderstands the scope of Rule 17(b).

The capacity to sue or be sued under Rule 17(b) is a question of a party's "legal existence"—whether it may act as a party in *any* type of litigation—and not whether it has a right of action under a *particular statute*. *DeGenova v. Sheriff of DuPage Cnty.*, 209 F.3d 973, 976 n.2 (7th Cir. 2000) (applying Rule 17(b) to determine whether the defendant was "a suable entity"); *see also Teamsters Local Union No. 727 Health & Welfare Fund v. L & R Grp. of Cos.*, 844 F.3d 649, 651 (7th Cir. 2016) ("Rule 17(b) says that only persons or entities with the capacity to sue or be sued may be litigants."). Len and Joanne's status as personal representatives does not deprive them of the "capacity to sue" under Rule 17(b). *See Smith v. United States*, 702 F.2d 741, 742-43 (8th Cir. 1983) (affirming the district court's judgment in a suit brought by a personal representative seeking a refund of tax penalties assessed against the decedent's estate); *Prof'l Fiduciary, Inc. v. Silverman*, 713 N.W.2d 67, 68 (Minn. App. 2006) (holding that a "personal representative can assert a malpractice claim against the decedent's former attorney"). But notwithstanding their legal capacity to sue or be sued, Len and Joanne quite clearly lack a viable claim under § 573.02. *See Ortiz*, 590 N.W.2d at 123-24; *Jensen*, 399 N.W.2d at 92; *Sheeley*, 2015 WL 506293, at *3.

It is too late for Boogaard to cure this defect by having Len and Joanne appointed as trustees. A wrongful death action under § 573.02(1) "requires the *appointment* of a trustee prior

to the expiration of the 3-year statute of limitations," which begins to run on the date of the decedent's death. *Ortiz*, 590 N.W.2d at 123. "Unless a cause of action has been legally asserted by a duly appointed trustee prior to the expiration of the three year commencement of suit limitation … , any subsequent attempted amendment after the expiration of the limitation period to cure the defect will not 'relate back' so as to revive the action." *Jensen*, 399 N.W.2d at 86; *see also Ortiz*, 590 N.W.2d at 123 (discussing Minnesota courts' "consistent interpretation of Minn. Stat. § 573.02's time limit as a strict condition precedent to maintaining a wrongful death action."); *Bonhiver v. Fugelso, Porter, Simich & Whiteman, Inc.*, 355 N.W.2d 138, 142 (Minn. 1984) ("Satisfaction of the limitation period is an absolute prerequisite to bringing suit."); *Berghuis v. Korthius*, 37 N.W.2d 809, 810 (Minn. 1949) ("This period fixing the time within which the right of action for wrongful death may be exercised is not an ordinary statute of limitations. It is considered a condition precedent to the right to maintain the action, and the lapse of such period is an absolute bar."); *Ariola v. City of Stillwater*, 889 N.W.2d 340, 348 (Minn. App. 2017) (observing that the three-year limitations period "is jurisdictional, requiring dismissal for failure to comply and does not have flexible parameters permitting it to be ignored if its application is too technical") (internal quotation marks and alterations omitted). Boogaard died in May 2011, Doc. 174 at ¶ 165, and no trustee was appointed in the three years that followed. That necessarily means that Boogaard's § 573.02(1) wrongful death claims can no longer be pursued, even if Len and Joanne were to be appointed as trustees in the future. *See Miklas v. Parrott*, 684 N.W.2d 458, 464 (Minn. 2004) ("Because a trustee was not appointed within the 3-year time limit of Minn. Stat. § 573.02, appellant cannot show a viable underlying claim of wrongful death."); *Ortiz*, 590 N.W.2d 119, 120, 123 (holding that "an amendment to the pleadings to bring the [§ 573.02(1)] action as trustee after the statutory filing period had expired

could not relate back to the original filing," because "no matter how compelling the circumstances for equitable intervention, equity cannot breathe life into a claim that has never been anything more than a 'nullity'"); *Sheeley*, 2015 WL 506293, at *4 ("Minn. Stat. § 573.02 … requires the *appointment* of a trustee prior to the expiration of the 3-year statute of limitations, not the mere filing of a petition therefor within the statutory period."); *Block v. Toyota Motor Corp.*, 5 F. Supp. 3d 1047, 1056, 1059 (D. Minn. 2014) (noting that "courts must strictly construe the wrongful death statute's requirements," which "include[] the wrongful death statute of limitations," and applying the three-year statute of limitations set forth in § 573.02(1)).

Section 573.02(2) does not expressly impose a three-year statute of limitations on survival actions. That said, Len and Joanne's inexcusable and inexplicable delay in seeking appointment as trustees has forfeited their ability to do so for purposes of saving Boogaard's survival claims in this suit. Len and Joanne substituted in as party plaintiffs in May 2014, Doc. 62, and were alerted to the trustee issue *three years* ago, in June 2014, when the NHL first argued that Boogaard had no claim because they had not been appointed as trustees, Doc. 64 at 3-7. Boogaard's survival claims are currently a "legal nullity" under Minnesota law, *Jensen*, 399 N.W.2d at 92, and now, more than six years after his death and three years after the NHL raised the trustee problem, it is too late for Len and Joanne to start afresh.

Even if Boogaard's survival claims were not barred by Len and Joanne's failure to seek and obtain appointment as trustees, they would be defeated on a separate ground. Section § 573.02(2) provides for a survival action based on injuries to the decedent only where "the person thereafter dies from a cause *unrelated* to those injuries." Minn. Stat. § 573.02(2) (emphasis added). The NHL contends that Boogaard's survival claims cannot proceed because the operative complaint alleges that the NHL's wrongful acts affirmatively caused Boogaard's

13

death, which means that those acts are the antithesis of acts that are "unrelated" to his injuries. Doc. 178 at 27. The NHL is correct. *See Kenna v. So-Fro Fabrics, Inc.*, 18 F.3d 623, 630 (8th Cir. 1994) ("The district court found, as a matter of law, that So-Fro's alleged negligence was not causally connected to Ms. Kenna's death. In light of this finding, the district court should have allowed Mr. Kenna to proceed with the survival action, because Minnesota allows a personal injury action to survive an individual's death if the person dies from a cause unrelated to those injuries.") (internal quotation marks omitted); *Sheeley*, 2015 WL 506293, at *3 ("[Section 573.02(2)] allows the appointed trustee to recover special damages when an individual suffers injury by a wrongful act or omission, but later dies from unrelated causes."). In any event, Boogaard offers no response to the NHL's argument, thereby forfeiting the point and, along with it, the survival claims in Counts I and III. *See G&S Holdings*, 697 F.3d at 538; *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2010) ("We apply [the forfeiture] rule where a party fails to develop arguments related to a discrete issue, and we also apply that rule where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss.").

### C. Boogaard Fails to State a Claim Under Any State Law

The court adds for good measure that dismissal is warranted no matter which state law applies. As noted, Counts I and II are based on the NHL's alleged promotion of violence, while Counts III and IV are based on the NHL's alleged negligent misrepresentations regarding the risks of head trauma. Doc. 174 at ¶¶ 33-118. According to the NHL, Counts I and II sound in negligence, whose elements are: "(1) the existence of a legal duty, (2) a breach of that duty, (3) causation, and (4) injury." *Moorhead Econ. Dev. Auth. v. Anda*, 789 N.W.2d 860, 888 (Minn. 2010); *see also Krywin v. Chi. Transit Auth.*, 938 N.E.2d 440, 446 (Ill. 2010) (same); *Pasternack*

*v. Lab. Corp. of Am. Holdings*, 59 N.E.3d 485, 490 (N.Y. 2016) (same). Also according to the NHL, Counts III and IV sound in negligent misrepresentation, whose elements include: (1) a duty owed to the plaintiff by the defendant; (2) the defendant's breach of that duty by communicating false information; and (3) the plaintiff's reliance on the incorrect information. *See Williams v. Smith*, 820 N.W.2d 807, 815 (Minn. 2012); *Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 973 N.E.2d 880, 889 (Ill. 2012); *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1109 (N.Y. 2011).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The NHL's initial brief argued that Boogaard failed to allege facts that satisfy the elements of negligence and negligent misrepresentation. Doc. 178 at 27-40. Specifically, the NHL contended that Boogaard's promotion of violence claims in Counts I-II do not plausibly allege (1) that the NHL had a legal duty not to promote violence or (2) that the NHL's conduct proximately caused Boogaard's injuries. *Id*. at 30-34. The NHL further contended that Boogaard's negligent representation claims in Counts III-IV do not plausibly allege (1) that the NHL had a duty to study or disclose the long-term effects of concussions, (2) that the NHL breached that duty by communicating false information, or (3) that Boogaard relied on that information. *Id*. at 35-40. Those arguments were eminently reasonable, yet Boogaard utterly and inexplicably failed to address them, thereby forfeiting both sets of claims. *See G&S Holdings*, 697 F.3d at 538; *Alioto*, 651 F.3d at 721 ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.") (internal

15

quotation marks omitted); *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("We have made clear in the past that it is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel, and we have warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (internal quotation marks and alterations omitted); *Lekas v. Briley*, 405 F.3d 602, 614-15 (7th Cir. 2005) ("While Lekas alleged in his complaint that his segregation was in retaliation for his filing of grievances, he did not present legal arguments or cite relevant authority to substantiate that claim in responding to defendants' motion to dismiss," and "[a]ccordingly, [his] retaliation claim has been waived.").

## II. Boogaard's Motion to Remand

Shortly after the NHL filed the present motion to dismiss, Boogaard filed a motion to remand this case to state court pursuant to 28 U.S.C. § 1367(c)(1) and (c)(3). Docs. 182-183. Those provisions state: "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if … (1) the claim raises a novel or complex issue of State law, … [or] (3) the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(1), (3). According to the Seventh Circuit:

> While a district court *may* relinquish its supplemental jurisdiction if one of the conditions of § 1367(c) is satisfied, it is not required to do so. … A district court deciding whether to retain jurisdiction pursuant to the factors set forth in § 1367(c) should consider and weigh in each case, and at every state of the litigation, the values of judicial economy, convenience, fairness, and comity. That the jurisdictional hook is eliminated before trial at best only preliminarily informs the balance; the nature of the state law claims at issue, their ease of resolution, and the actual, and avoidable, expenditure of judicial resources can and should make the difference in a particular case.

*Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 608 (7th Cir. 2008) (internal quotation marks and citations omitted).

Remand is not justified under subsection (c)(1) because Boogaard's state law claims do

16

not raise any state law issue that is "novel or complex." Rather than point to any particular state law issue, Boogaard contends that "[t]he NHL's utilization of twenty-five (25) pages in explaining its seemingly complex arguments tellingly previews for this Court the myriad 'complex issues' it intends to raise to defend against Plaintiffs' state law claims." Doc. 183 at 3. Boogaard greatly overstates the novelty or complexity of the state law principles that defeat his claims. In fact, the court dismissed those claims, on independent grounds, by applying settled law and without confronting complicated state law questions. *See Ervin v. OS Rest. Servs.*, 632 F.3d 971, 980 (7th Cir. 2011) ("The plaintiffs' claims … do not present any complex state-law issues, and so subsection (c)(1) should not be a problem."). And even if the state law claims were complex, the claims arise under Minnesota law, and for purposes of § 1367(c)(1), Illinois state courts have no advantage over this court in interpreting the law of a different State. *See David v. Signal Int'l, LLC*, 37 F. Supp. 3d 822, 830 (E.D. La. 2014) (rejecting the applicability of § 1367(c)(1) where the "state law claims [were] pled under Indian law, Texas law, and Mississippi law"); *Shovah v. Mercure*, 879 F. Supp. 2d 416, 422 & n.3 (D. Vt. 2012) (same, where the court assumed that the claims were governed by New York law).

Nor is remand justified under § 1367(c)(3). True, all of Boogaard's federal claims have been dismissed, and only state law claims among non-diverse parties remain. 20 F. Supp. 3d at 652 n.* ("With Minnesota citizens on both sides of the case, there is no diversity jurisdiction."). Under § 1367(c)(3), "[a]s a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pendent state claims." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007); *see also Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) ("[W]hen the federal claims are dismissed before trial, there is a presumption that the court will relinquish jurisdiction over any remaining state

17

law claims."). The general rule has three exceptions: "when the refiling of the state claims is barred by the statute of limitations; where substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim is to be decided." *Williams*, 509 F.3d at 404; *see also RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 480 (7th Cir. 2012); *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007).

The third exception applies here because the resolution of Boogaard's state law claims is "clearly apparent." *Williams*, 509 F.3d at 404. As noted, there are independent grounds for dismissing those claims—that Len and Joanne Boogaard have not been named trustees, and that Boogaard has failed to respond to the NHL's substantive challenges to his claims. That neither ground requires the application of Illinois law—the second ground implicated Illinois law, but the court's rejection of Boogaard's Illinois claims (assuming they were, in fact, Illinois claims) turned on forfeiture, not a detailed analysis of Illinois law—eliminates the "paramount concerns" of "respect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law." *Huffman v. Hains*, 865 F.2d 920, 923 (7th Cir. 1989). In the end, this is a case where "the values of judicial economy, convenience, fairness, and comity" are best served by retaining supplemental jurisdiction, *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997), which the court has elected to do in its "broad discretion," *Hansen*, 551 F.3d at 608 (affirming the district court's decision to retain jurisdiction where "the correct disposition of the state claims against HSSC is clear and does not entangle the federal courts in difficult issues of state law"); *see also Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1252 (7th Cir. 1994) ("[R]etention of a state-law claim is appropriate when the correct disposition of the claim is so clear as a matter of state law that it can be determined without further trial

18

proceedings and without entanglement with any difficult issues of state law.") (internal quotation marks omitted).

## Conclusion

The NHL's motion to dismiss is granted, and Boogaard's motion to remand is denied. The dismissal of Boogaard's claims is with prejudice. Boogaard has had three opportunities to plead his claims, with one coming after the NHL was granted summary judgment, and those three are enough. *See Agnew v. NCAA*, 683 F.3d 328, 347-48 (7th Cir. 2012) ("By our count, plaintiffs had three opportunities to identify a relevant market in which the NCAA allegedly committed violations of the Sherman Act. … We therefore cannot find that the district court abused its discretion in dismissing plaintiffs' claims with prejudice."); *Stanard v. Nygren*, 658 F.3d 792, 800 (7th Cir. 2011) ("The court's decision to dismiss the case with prejudice was also eminently reasonable. Again, this was Maksym's third attempt to plead properly, and he was still far from doing so."); *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("Generally, if a district court dismisses for failure to state a claim, the court should give the party *one* opportunity to try to cure the problem, even if the court is skeptical about the prospects for success.") (emphasis added). Moreover, by failing to respond on the merits to the NHL's argument that the second amended complaint did not plead viable state law negligence and misrepresentation claims, Boogaard forfeited his claims, and a plaintiff who forfeits his claims does not get a chance to replead. *See Baker v. Chisom*, 501 F.3d 920, 926 (8th Cir. 2007) (affirming the dismissal with prejudice of a claim where the plaintiff "failed to defend that claim or to urge that it be dismissed without prejudice"). Finally, in his opposition brief, Boogaard did not request a chance to replead in the event the court dismissed his claims. *See Johnson v. Wallich*, 578 F. App'x 601, 603 (7th Cir. 2014) ("Johnson also argues that the district court

should have allowed him to amend his complaint to correct any deficiencies. But Johnson did not request leave to amend his complaint, and the district court cannot abuse its discretion by denying leave to amend if Johnson never sought it."); *James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 400-01 (7th Cir. 2006) (rejecting the plaintiff's argument that the district court erred in dismissing its complaint with prejudice, rather than without prejudice and with leave to amend, where the plaintiff did not properly request leave to amend).

Judgment will be entered in favor of the NHL and against Boogaard. Although judgment is entered in the NHL's favor, this opinion should not be read to commend how the NHL handled Boogaard's particular circumstances—or the circumstances of other NHL players who over the years have suffered injuries from on-ice play. *Cf. In re NHL Players' Concussion Injury Litig.*, MDL 2551 (D. Minn.) (considering claims similar to Boogaard's claims in this case).

June 5, 2017

United States District Judge